THE STATE, THE MUTUAL BENEFIT LIFE INSURANCE COMPANY, PROSECUTORS, v. WILLIAM T. UTTER, RECEIVER OF TAXES IN THE CITY OF NEWARK.

1. A mutual life insurance company was incorporated by the legislature, without any capital stock—*held*, that the company could not, by the mere force of a by-law, change from a corporation having no capital stock to one which has ; such a by-law contravenes the policy of the eighth section of the act of 28th of March, 1862. *Pamph. Laws* 348.
2. Where the commissioners of appeal in matters of taxation adjudge, upon notice and hearing, that a certain amount be added to the assessment against an individual, there is no error on the part of the commissioners.

On *certiorari*.   In matter of taxation.

For prosecutor, *J. P. Bradley.*

For defendant, *T. Runyon,*

VREDENBURGH, J.   This is a *certiorari* directed to the receiver of taxes for the city of Newark, commanding him to send up an order of the commissioners of appeal in cases of taxation for increasing the assessment of taxes against the prosecutors, in the sum of three million three hundred and thirty-eight thousand eight hundred and eighty-two dollars and one cent, for the year 1862. It appears by the return, that on the 5th of November, 1862, the said commissioners, upon due notice, hearing and consideration, adjudged that the prosecutors were assessed at too low a rate, and that they ought, agreeably to the principles of justice, to be assessed, in addition, for the sum of three million three hundred and thirty-eight thousand eight hundred and eighty-two dollars and one cent, and that the last-mentioned sum ought to be added to the assessment of said prosecutors, and said commissioners thereby adjudged that it be added accordingly.

The first reason assigned for reversal is, " that the said

company were assessed therein for the whole amount of their assets without any deduction for liabilities, whereas the said company had a capital stock, and should only have been assessed the amount of such capital stock, together with their accumulated surplus by which they would have been allowed for their liabilities."

The statute under which this tax was imposed, is that of March 28th, 1862, (*Pamph. L.* 1862, *p.* 349, § 8,) which provides that all private corporations are to be assessed at the full amount of their capital stock paid in and accumulated surplus, and such as have no capital stock shall be assessed for the full amount of their property and valuable assets, without any deduction for debts or liabilities.

At the time of the assessment by the assessor, and also at the time of this order by the commissioners of appeal, it is admitted that the prosecutors had assets, including bonds, notes, &c., to the amount of four million one hundred and eighty-two thousand nine hundred and twenty-eight dollars and sixty-one cents, of which the assessor had only assessed them for six hundred and sixty-five thousand three hundred dollars, whereupon this appeal was taken.

Upon this point there are two questions—

1st. Were the prosecutors a corporation, having capital stock within the meaning of said act?

2d. If they were, does it alter the case?

As to the first question.   It is admitted that the prosecutors were a mutual life insurance company, and had no capital stock, by the very terms of their incorporation by the legislature.

But it is insisted and proved that, on the 28th of April, 1862, the company passed a by-law that a capital stock be thereby created, and the first payment made or to be made on every policy of insurance for life issued, be, and was thereby constituted and set apart as such capital stock.   This amount so set apart amounted, when the assessor made his assessment, to the said sum of six hundred and sixty-five thousand and three hundred dollars.

Now had the prosecutors the power, by the mere force of one of their own by-laws, to change a corporation which by the then existing laws was liable to be taxed on four million four thousand one hundred and eighty-two dollars and seven cents, as a corporation having no capital stock, to one liable to be taxed only six hundred and sixty-five thousand three hundred dollars, as a corporation having a capital stock?

It is contended that the right and power to do so are derived from their general nature and powers as a corporate body. But no case or authority is cited, and no such custom intimated. But even if this were so, this by-law in this case is void, first because it contravenes the policy of the said eighth section of the act of 1862. This section evidently contemplates that such corporations as the prosecutors, should be assessed for the full amount of their valuable assets. This by-law virtually repeals this eighth section, *quo ad* three million dollars of its assets. The public law provides that this corporation shall be taxed on all its assets, without deducting debts. This corporation enacts a by-law which provides that they shall be taxed not on all assets, but only on such part of them as they see fit to call capital stock.

In the second place, the stock created by this by-law is not such a stock as is contemplated in said eighth section. The capital stock there contemplated is such stock as is created and recognized by some act of the legislature or in some public law; so that, notwithstanding this by-law, these prosecutors are not such a corporation as can be said to be a corporation having capital stock within the meaning of the act.

But suppose this by-law did constitute the prosecutors a corporation having capital stock within the meaning of the act, does it alter the case? It is apparent from said eighth section, that the legislature intended to adopt an entirely different policy as to taxation between corporations and individuals. With respect to individuals, they meant to de-

duct debts and liabilities; with respect to corporations, they did not. In this respect it made no difference whether the corporation had capital stock or not.

The legislature did not intend to have one principle for taxing corporations which had a capital stock, and another one for those having none. In all cases, with respect to corporations, they intended to tax for all assets without allowance for debts. Certainly the legislature could never have intended such unequal legislation, that corporations having a capital stock should be liable for all assets without deduction, and those having none should be taxed upon an entirely different principle. So here, if this by-law had, instead of calling only this six hundred and sixty-five thousand three hundred dollars capital stock, called the whole assets capital stock, the whole would have been taxed as capital stock. What is the effect of the by-law calling only a part of this, viz., the six hundred and sixty-five thousand three hundred dollars, capital stock? it only leaves the balance, viz., three million three hundred and twenty-eight thousand eight hundred and eighty-eight dollars and one cent, as accumulated surplus and taxable as such. The legislature did not intend, in either case, that the debts should be deducted from the property of the corporation. It did so as to individuals, but not as to corporations. The fact is, that the whole of these assets are capital stock in the eye of the statute, if this by-law changed this corporation from one having no capital stock to one which has. The prosecutors say that it is wrong to assess them for this three million dollars, because it is not, under their by-law, capital stock, but accumulated surplus, and from that they may deduct liabilities. But where do they, upon their own theory show, under the statute, any right to deduct liabilities from their accumulated surplus? The statute under which they claim it, expressly negatives such right. The act, section eight, does not provide for deducting liabilities from such surplus.

I think, therefore, that the prosecutors could not, by a by-law, change this corporation from one having no capital

State, Mutual Ins. Co., &c., pros., v. Receiver of Taxes of city of Newark.

stock, to one which has, and if they could, it would make no difference in the amount of property liable to be assessed.

The next reason assigned for setting aside this assessment is, that the commissioners of appeal in point of fact made no addition to the assessment already on the duplicate.

No such reason as I can see is assigned, but suppose there is, is it a good reason for setting aside the proceedings of the commissioners?

Nothing is brought up by the *certiorari* but the order of the commissioners increasing the tax. No question is made as to the proceedings of the assessor. We are to assume, therefore, that the assessor appeared before the commissioners of appeal, with his duplicate, with his lists, and his assessment upon each individual duly carried out. That the amount each one was taxed according to the given rate, was in fact stated upon the duplicate.

The assessor with his duplicate, the complainant, and the prosecutor, duly appeared before the commissioners who, upon the hearing, adjudged that the sum of three million dollars ought to be added to the assessment, and adjudged that it be added accordingly. The act, (*Nix. Dig.*, 850, § 57,*) provided that the commissioners should make such addition to the assessment as shall be agreeable to the principles of justice.

The adjudication of the commissioners was, in legal effect, that the assessor should add the three million dollars to the amount of property on which the prosecutors should be taxed, and that it should be at the same rate as others were taxed at. The duplicate showed, we must assume, at what rate others had been taxed, and when the commissioners ordered this amount to be added to the amount on which the prosecutors were to be taxed, it was just as certain what amount of tax the prosecutors were to pay as if the commissioners with their own hands had taken the duplicate and added it, and carried out the results.

What is the meaning, in the second section of the act of 1848, (*Nix. Dig.* 850,) of the phrase, "if any person shall be

*Rev., p. 1149, § 56.

State, Mutual Ins. Co., &c., pros., v. Receiver of Taxes of city of Newark.

assessed at too low a rate?" It has no reference to the whole amount of tax to be raised; that is settled by other authorities. It is the duty of the assessor to enumerate the things to be taxed, and their value, and then the rate and the amount of each person's tax is a mathematical result. Under this phrase, at too low a rate, the duty of commissioners is two-fold, one to see if the assessor rates one person at one dollar on a thousand and another at fifty cents a thousand; that is one meaning of the phrase, "at too low a rate;" but that difficulty never arises practically, and there is no allegation of that kind here. The ordinary difficulty is, either that the assessor values the articles too low, or omits some property altogether, and then in either case such person is assessed at too low a rate within the meaning of this phrase.

The case here was, that the assessor had omitted a large amount of property altogether, and the commissioners of appeal corrected the evil by ordering it and its value to be added to the assessor's list, and having done this, their whole duty was performed.

There was nothing more for them to do in any other meaning of the terms "assessed at too low a rate." After the adjudication it was a mere manual labor for the assessor to add the additional tax, and he was the proper official, and it was his duty to do so; or if the commissioners had handed the duplicate and their order to the receiver of taxes, he would have known precisely, from the legal documents before him, how much he should rightfully collect from the prosecutors. We do not know but the assessor, immediately on the adjudication, added this sum to his duplicate and carried out the precise amount. In the absence of all evidence, we are to presume that he did so.

The proceedings should be affirmed.

ELMER, J., dissenting. The proceedings of the commissioners now before us, were intended to be made in pursuance of the act of March 9th, 1848, (*Nix. Dig.* 850,*) which provides, that if any person or body corporate shall be assessed

*Rev., p. 1149.

State, Mutual Ins. Co., &c., pros., v. Receiver of Taxes of city of Newark.

at too low a rate, upon a complaint being made to the commissioners of appeal, they may make such addition to the assessment as shall be agreeable to the principles of justice.

One of the grounds insisted upon for setting aside the assessment before us, which comes fairly within the scope of the reasons assigned is, that, in point of fact, the commissioners made no addition to the assessment already on the duplicate, either in form or in substance. Upon referring to the general tax law of 1846, (*Nix. Dig.* 842,*) to the supplement of 1848,† and to the tax law of 1862, under which the taxes in question were assessed, it is very apparent that a distinction is made between the valuation of the property and the assessment itself, which means the amount of tax required to be paid by the individual or corporation upon whom the assessment is made. It is this assessment to which the commissioners of appeal are empowered to make such addition as shall be agreeable to the principles of justice. The objection urged is, that they have not done this, but have only adjudged that the assessment ought to have been made upon a much higher valuation of the prosecutors' property, than that returned by the assessor.

On behalf of the city it is contended " that the legislature manifestly presumed that the rate of taxation being fixed as everybody knows, in every year before the action of the commissioners could take place in this matter, it would be sufficient for the commissioners to add to the amount of the assessment. The fixing of the tax is a mere, and very simple matter of arithmetic. The principle *id certum est quod certum reddi potest* applies.

But it nowhere appears what the rate of taxation fixed by the assessor was, the law, at that time, not requiring the duplicate to state the rate, as it now does. The receiver of taxes was left to calculate the amount that was to be assessed from the verbal statement, not made even under the sanction of his oath, of the assessor; or possibly by observing how the tax had been calculated in other cases. This is, by far, too loose and unsatisfactory. And besides it may be

---

* *Rev.*, p. 1140.    † *Rev.*, p. 1149.

that the commissioners, if they had proceeded as they were required to do, to ascertain what addition the principles of justice required them to make to the assessment of the tax, would have seen reason, upon examining the whole amount of tax authorized to be raised, to estimate that addition upon a different ratio of assessment from that adopted by the assessor. I do not mean to suggest that they are, in all cases, bound to do so; but there is nothing in the law which forbids their doing so, if justice requires it.

Being clearly of opinion that the adjudication and certificate of the commissioners is radically deficient and illegal, and must for that reason be set aside, it is not necessary to examine the question submitted in regard to the principle upon which the valuation of the prosecutor's property was increased, a question of no further importance, in consequence of the alteration since made in the law applicable to the taxation of mutual insurance companies.

The CHIEF JUSTICE and Justice WOODHULL concurred in affirming the proceedings.